ISABELLA A. FLUKER *v.* BOBO, Sheriff, et al.—J. C. COOPER *v.* DAVIS et al.

The Statute of 1855, relative to bonds of State and parish officers, so far as it relates to the enforcement of the rights created by the registry of the bond is purely remedial, and in no manner affects the previously existing rights, the enforcement of which it was intended to facilitate. It was intended to give to the registry of the bond, as to property sold after its registry, the same effect as that conferred on acts of sale by the clause of non-alienation.

The mortgage created by the act was intended to secure the bond. There is nothing in the legislation on the subject which justifies the inference that the bond was intended exclusively for the benefit of the State. It enured to the benefit of any person who had a claim against the Sheriff for malfeasance in office. And *By the Court:* the provisions of the Statute are applicable to " all public officers" who, under existing or prospective legislation, were "required to give a bond." The Act of 1855 did not repeal the Acts of 1847 and 1848, so far as the provisions of those Acts were reënacted in the revisory legislation of 1855.

Sureties have an equitable interest in the payment of the principal demand, and a judgment creditor has a right to permit an execution to issue at their instance.

APPEAL from the District Court of the parish of Morehouse, *Richardson* J. *Todd & Brigham,* for *Mrs. Fluker. Baker & Harris,* for *Cooper. McGuire & Ray,* for defendant.

77

FLUKER
*v.*
BOBO:

LEA, J. In these cases, the plaintiffs have obtained injunction against the execution of a judgment in favor of *Benjamin Davis* against *Thomas N. Barham*, so far as the execution of said judgment is sought to be enforced by the seizure and sale, under execution, of property purchased by them of *Barham*.

The state of facts out of which this litigation arises is substantially as follows : *Barham*, who was elected Sheriff of the parish of Morehouse in November, 1849, gave his bond, as Sheriff, dated November 19th, 1849. At the date of the execution and approval of this bond, *Barham* was the owner of the property the seizure of which is the subject matter of contestation in these cases. On the 5th of December, 1851, *Barham* sold a part of this land to *James C. Cooper*, and on the 6th December, 1851, he sold the remaining portion to *B. F. Miller*, who subsequently transferred it to *D. J. Fluker*, whose representative is one of the plaintiffs herein. *Benjamin Davis*, the defendant in these injunction suits obtained judgment against *Barham* and his sureties, upon the official bond above referred to, for the sum of $3236 23, with interest thereon at the rate of 8 per cent. per annum, from the 1st day of October, 1843 ; *Davis'* right of action being based upon malfeasance in office, by *Barham*, which resulted in injury to him. Upon this judgment execution issued against *Thomas N. Barham*, in virtue of which the property which had been sold, as before stated, to *Fluker* and *Cooper* was seized.

The plaintiffs urge in support of the injunctions sued out by them the following grounds :

1st. That even if the mortgage claimed really existed upon the lands seized, they could not be proceeded against by a direct seizure, but that the plaintiff in execution should have resorted to an hypothecary action ; and further, that the writ being directed solely against the property of *Barham*, the Sheriff was without authority to seize the property of the plaintiffs.

2d. That no such mortgage existed by virtue of any law of the State, and that the registry of a Sheriff's bond created a mortgage only in favor of the State and not in favor of private individuals.

3d. That the bond of *Barham* was a nullity because not executed according to law.

4th. That the lands in question were not the subject of a mortgage at the date of the registry of the bond, until the 29th June, 1854, as up to that period they were a part of the public domain of the United States, and before that period *Barham* had parted with whatever rights he might have asserted to the lands.

5th. That the mortgage expired with *Barham's* term of office.

6th. That the seizure was made at the instance, and by the direction of the sureties of *Barham*, and that by the terms of the judgment they were subrogated to the rights of the plaintiff therein, upon the payment of the judgment or a part of the same, which they have never done.

7th. That the seizure was for the full amount of the judgment which, including interest, exceeded $6000 ; whereas, the mortgage could have effect only for the amount of the bond, viz : $5000.

Lastly, it is urged that should the injunction be dissolved, the execution should be credited with $2500, the value of two slaves seized in execution of the original judgment against *Hall*, and the subject matters of an hypothecary action instituted by *Davis* against *W. T. Hall*.

On the first point we deem it sufficient to remark, that the mortgage is created by the registry of the bond, in accordance with the provisions of the Act of 1847, relative to the bonds of tax collectors and public officers. By the terms of this Act (section 4th), it was provided that when the Treasurer or Auditor of the State shall issue execution against the Sheriff, the officer under it may seize and sell according to law any land or slaves which may have belonged to the principal obligor at the date of the rigistry of the bond without regard to any subsequent transfer or change of title, and in whatever hands the same may be found. By the Act of 1855, relative to bonds of State and public officers, this summary remedy was extended to all cases in which execution shall issue. It is urged that this Act, having been passed since the registry of the bond, has no application to a bond enacted before its passage. The Statute is, in our opinion, so far as it relates to the enforcement of the rights created by the registry of the bond, purely remedial, and in no manner affects the previously existing right, the enforcement of which it was intended to facilitate. It was intended to give to the registry of the bond (as to property sold after its registry) the same effect as that conferred in acts of sale by the clause of non-alienation.

2d. The mortgage created by the act was intended to secure the bond. There is nothing in the legislation on the subject which justifies the inference that the bond was intended exclusively for the benefit of the State: by its provisions it is in terms applicable to "all public officers" who, under existing or prospective legislation, were "required to give bond." The Act of 1855 did not repeal the Acts of 1847 and 1848, so far as the provisions of those Acts were reënacted in the revisory legislation of 1855. See State on the relation of *Holmes* v. *Wiltz*, lately determined.

3d. The formalities required in the execution of the Sheriff's bond are directory, and were intended to furnish undoubted and accessible evidence of its execution; the ommission of such formalities does not destroy the validity of the bond nor any of the rights of parties dependant thereon.

4th. The plaintiffs cannot repudiate their own title as derived from *Barham*. If they have acquired nothing under the transfers from *Barham*, the land seized is still his property, and they are without interest in opposing the seizure. It appears that the relinquishment, from Congress, was made in favor of *Barham*.

The 5th ground is not seriously urged. If valid, it would render useless the most important provisions of the law.

6th. The plaintiff had a right to permit the execution to issue at the instance of the sureties. If the plaintiff, in execution, authorizes the proceeding, the defendants cannot complain of a resort to executory proceedings for the purpose of enforcing payment. The sureties have an equitable interest in the payment of the principal demand.

7th. The judgment appealed from has reduced the amount demandable upon the writ to that expressed on the face of the bond. The appellee has acquiesced in this reduction, and the appellant is without interest in disturbing it.

As respects the credits claimed, we find no evidence that any funds have been realized or could have been realized by the seizures of the two slaves referred to in the supplemental petition.

The defendants have ample legal remedies to secure the recognition of any actual payments made, or to be made, upon the principal debt sought to be enforced.

We find no error in the decree of the District Judge, subjecting the property last alienated by the judgment debtor to the satisfaction of the writ, before proceeding to the seizure and sale of that transferred by previous alienations. It is correctly urged, on behalf of *Cooper*, that the effect of the laws of 1855 and 1847 was merely to modify the general law so far as to dispense a party holding a general mortgage resulting from the registry of a Sheriff's bond from the necessity of instituting an hypothecary action. It is contended that Art. 715 of the Code of Practice does not apply in this case, we think it does ; but in the absence of any statutory provision regulating the subject, such a mode of proceeding would result necessarily from the relations of the parties, and the equitable rights incident thereto. See *Patin* v. *Pregean*, 7th La., 301.

Judgment affirmed.